UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

RAYMOND M. ROBERTS, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,                                    16-cv-913 (JGK)

                    Plaintiff,               OPINION AND ORDER

        - against –

WEIGHT WATCHERS INTERNATIONAL, INC.,

                    Defendant.

───────────────────────────────

JOHN G. KOELTL, District Judge:

    This dispute arises out of the allegedly shoddy online

website and mobile phone application that the defendant, Weight

Watchers International, Inc., provided its paying subscribers as

part of its fee-based subscription service, "Online*Plus*." The

plaintiff, Raymond M. Roberts, brings this purported class

action for breach of contract on behalf of himself and all

others who subscribed to Online*Plus* from November 26, 2015

through the present.[1] The defendant has moved to dismiss the

claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.

    The plaintiff initially brought this action in the Supreme

Court of the State of New York, New York County. The defendant

───────────────────

[1] While the Amended Complaint alleged that the defendant violated
New York General Business Law § 349, the plaintiff in his papers
has abandoned that claim. See Dkt. 30 at 5 n.1.

subsequently removed the action to this Court pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453.

For following reasons, the defendant's motion to dismiss is **granted and the Amended Complaint is dismissed with prejudice**.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in

2

the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Springer, 2015 WL 9462083, at *1.

## II.

The allegations in the Amended Complaint are accepted as true for the purposes of this motion to dismiss.

The defendant is a leading provider of weight management services. Am. Compl. ¶ 3. The defendant offers, among other things, the fee-based Online*Plus* subscription service that is designed to help any subscriber manage the subscriber's weight. Am. Compl. ¶ 1. As part of the Online*Plus* subscription, paying subscribers gain access to an online website and the Weight Watchers Mobile App (the "Mobile App"), both of which purport to offer a bevy of features to facilitate weight management, including the ability to "chat" with a "Weight Watchers Coach" at any time for "motivation and advice," and online data storage

that enables users to track recipes, food intake, and physical activity. Am. Compl. ¶¶ 1, 8.

Subscribers to the defendant's "Fee-Based Products," which includes Online*Plus*, must agree to the Terms and Conditions set forth in a 25-page subscription agreement (the "Subscription Agreement") that was operative throughout the proposed class period. Subscription Agreement (available at Dkt. 29-1) at 1; see also Subscription Agreement §§ 1-2; Am. Compl. ¶ 7. The Subscription Agreement granted a subscriber the "right to access, use and display" Online*Plus,* including through the website and Mobile App.[2] Subscription Agreement § 2; see also Am. Compl. ¶¶ 1, 8.

The Subscription Agreement provided for the broad disclaimer of any warranties and representations related to the

---

[2] The parties agree that the Subscription Agreement constitutes a valid contract and governs this dispute. The Subscription Agreement defined the term "Fee-Based Products" as any "fee-based products or offerings including Online*Plus* and Personal Coaching." Subscription Agreement at 1. The Subscription Agreement defined the term "Website" to include all websites that the defendant and its related entities "owned or operated." Subscription Agreement § 1. The defendant presumes that "Website" as used in the Subscription Agreement included any access, use and display of Online*Plus* regardless of whether Online*Plus* was accessed, used or displayed through its website or Mobile App, and the plaintiff accepts that construction. Regardless, a less expansive construction of "Website" that excluded access, use and display of Online*Plus* through the Mobile App would not change the outcome of this case because the term "Fee-Based Products" clearly included all of Online*Plus*'s component features, including its website and Mobile App.

use of Online*Plus* in the section entitled "Disclaimers of

Warranties":

> THE PRODUCTS, OFFERINGS, CONTENT AND MATERIALS
> (INCLUDING, WITHOUT LIMITATION, THE FEE-BASED
> PRODUCTS) ON THIS WEBSITE ARE PROVIDED "AS IS" AND
> WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR
> IMPLIED. WE DISCLAIM ALL WARRANTIES, EXPRESS OR
> IMPLIED, INCLUDING BUT NOT LIMITED TO . . . FITNESS
> FOR A PARTICULAR PURPOSE [and] COMPAT[I]BILITY . . . .
> NEITHER [the defendant or any related entities]
> WARRANT THAT THIS WEBSITE OR ANY FUNCTION CONTAINED IN
> THIS WEBSITE WILL BE UNINTERRUPTED OR ERROR-FREE, [or]
> THAT DEFECTS WILL BE CORRECTED . . . . YOU WILL BE
> SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER
> SYSTEM OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD
> OF ANY SUCH PRODUCT, OFFERING, CONTENT OR MATERIAL
> (INCLUDING, WITHOUT LIMITATION, THE FEEBASED
> PRODUCTS). NEITHER [the defendant or any related
> entities] WARRANT OR MAKE ANY REPRESENTATIONS
> REGARDING THE USE OR THE RESULTS OF THE USE OF THE
> PRODUCTS, OFFERINGS, CONTENT AND MATERIALS (INCLUDING,
> WITHOUT LIMITATION, THE FEE-BASED PRODUCTS) IN THIS
> WEBSITE IN TERMS OF THEIR . . . RELIABILITY, OR
> OTHERWISE. Subscription Agreement § 17 (emphasis in
> original).

In addition, the Subscription Agreement limited a

subscriber's recourse against the defendant, providing that a

subscriber's "*only right* with respect to any *dissatisfaction*

with any *modification* or *discontinuation* of service made by us

pursuant to this provision or this Agreement, or any policies or

practices by us in providing this Website or our Fee-Based

Products, . . . is to *cancel* or *terminate* your *subscription* or

registered user account . . . ." Subscription Agreement § 2

(emphasis added). The Subscription Agreement reiterated the

point several times. In the section entitled "Cancellation of

Subscription," the Subscription Agreement provided:

> You understand and agree that the *cancellation or termination of your subscription is your sole right and remedy with respect to any dispute with us including*, without limitation, any dispute related to, or arising out of: . . . (iii) the content available through this Website or any change in content provided through the Website or on or through a Fee-Based Product; [or] (iv) your ability to access and/or use our Website or any Fee-Based Product . . . . Subscription Agreement § 4 (emphasis added).

Likewise, the section entitled "Limitation of Liability"

provided:

> YOU EXPRESSLY UNDERSTAND AND AGREE THAT WE AND OUR AFFILIATES SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, OR ANY OTHER DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), ARISING OUT OF, OR RESULTING FROM, (A) THE USE OR THE INABILITY TO USE THIS WEBSITE (INCLUDING, WITHOUT LIMITATION, THE FEE-BASED PRODUCTS); . . . OR (F) ANY OTHER MATTER RELATING TO THIS WEBSITE. IN NO EVENT SHALL OUR TOTAL LIABILITY TO YOU FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION (WHETHER IN CONTRACT, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), OR OTHERWISE) EXCEED THE AMOUNT PAID BY YOU, IF ANY, FOR ACCESSING THIS WEBSITE. IF YOU ARE DISSATISFIED WITH ANY PORTION OF OUR WEBSITE, OR WITH ANY PROVISION OF THIS AGREEMENT, YOUR SOLE AND EXCLUSIVE REMEDY IS THE DISCONTINUATION OF YOUR USE OF THIS WEBSITE. Subscription Agreement § 18 (emphasis in original).

Finally, the Subscription Agreement provided that

subscription fees were generally nonrefundable except in certain

limited circumstances related to the cancellation of the

Subscription Agreement where a subscriber had already prepaid the defendant pre-cancellation, <u>see</u> Subscription Agreement §§ 2, 3.E, or where the defendant inadvertently charged a subscriber post-cancellation, <u>see</u> Subscription Agreement § 4.

On September 28, 2015, the plaintiff alleges that he became a subscriber to Online*Plus* by agreeing to the Subscription Agreement, and paying the defendant an initial membership fee of $49.95 for the first three months of his membership, and $19.95 per month thereafter. Am. Compl. ¶ 7.

On or around November 26, 2015, the plaintiff alleges that the defendant botched major updates to the website and Mobile App, leading the quality of Online*Plus* to decline markedly. Am. Compl. ¶¶ 8, 13. From that point on, the plaintiff alleges that myriad technical glitches have beset the website and the Mobile App despite the defendant's efforts to remedy them in subsequent updates and, accordingly, that the "plaintiff and the other Class Members have been unable to fully utilize the online website and Mobile App, which are integral to the Online*Plus* program." Am. Compl. ¶¶ 11-13.

The plaintiff alleges that on March 17, 2016, he was personally "unable to utilize the Mobile App" after two lengthy conversations with the defendant's support staff, Am. Compl. ¶ 19, and that members of the class have lost data stored on the website, Am. Compl. ¶¶ 22-23. The plaintiff also alleges that

7

numerous Online*Plus* subscribers have complained about Online*Plus* to the defendant and posted complaints to various Internet sites, such as Facebook and Consumer Affairs. Am. Compl. ¶¶ 15-18. The Amended Complaint includes representative examples of these complaints, such as claims that stored data has been deleted, that interfaces are unwieldy, that subscribers have had occasional problems logging into the website and the Mobile App, that the website and Mobile App are "incomplete," and that the defendant's support staff has been unable to fix these issues. Am. Compl. ¶¶ 16-18.

The Amended Complaint alleges that the defendant is aware of the "disastrous rollout" of the updated website and Mobile App, for which the defendant has publicly apologized multiple times. Am. Compl. ¶¶ 15, 21. Nevertheless, the defendant has not offered a general refund to the subscribers that constitute the purported class, although the defendant has purportedly given occasional refunds to especially vociferous subscribers on a case-by-case basis. Am. Compl. ¶ 20.

The plaintiff attributes Online*Plus*'s problems to the defendant's alleged failure to follow unofficial though accepted industry standards in the software development field, which the plaintiff terms "best practices." Am. Compl. ¶ 13. For example, the plaintiff alleges, among other things, that the November 26, 2015 update was premature and poorly planned. Am. Compl. ¶ 14.

The plaintiff claims that the defendant breached the Subscription Agreement because the website and the Mobile App "ceased working properly and Class members' ability to use [the website and the Mobile App] was either diminished or non-existent for extended periods of time." Am. Compl. ¶¶ 33-35. He seeks compensatory damages for Online*Plus*'s subscription fees, and compensatory damages, including consequential damages, for any lost data previously stored on the website and the Mobile App. Am. Compl. ¶¶ 34-35.

### III.

### A.

As an initial matter, the plaintiff includes in his Amended Complaint a host of third-party complaints about Online*Plus* culled from various online sources. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the plaintiff's allegations that others have complained about Online*Plus*. See Warth v. Seldin, 422 U.S. 490, 502 (1975).

However, as the purported lead plaintiff of a proposed class action, the plaintiff must have standing to bring his claim and accordingly "must allege and show that [he] personally [has] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s] and which [he] purport[s] to represent." Id.; see also Springer, 2015 WL 9462083, at *4. Accordingly, to survive the motion to

dismiss the Amended Complaint, the plaintiff must show that he has a plausible breach of contract claim against the defendant.

**B.**

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (citation and internal quotation marks omitted); see also Apple Mortg. Corp. v. Barenblatt, 162 F. Supp. 3d 270, 281 (S.D.N.Y. 2016).[3] The "unambiguous provisions" of a contract "must be given their plain and ordinary meaning." White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007). A contract is unambiguous when its "language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (citation and internal quotation marks omitted).

---

[3] The parties both assume that New York law applies to the Subscription Agreement and the Subscription Agreement itself specifies that it "shall be governed by and construed in accordance with the law of the State of New York, without giving effect to any principles of conflicts of law." Subscription Agreement § 20. See also Apsan v. Gemini Consulting, Inc., No. 98 CIV. 1256 (JGK), 1999 WL 58679, at *2 n.1 (S.D.N.Y. Feb. 4, 1999).

**(i)**

The plaintiff identifies one obligation that the defendant purportedly breached under the Subscription Agreement: the "right to access, use and display" Online*Plus* through its component parts, the website and the Mobile App. Subscription Agreement § 2. The plaintiff argues that the alleged technical issues he experienced --- specifically, data loss and, on one occasion, difficulty accessing Online*Plus* --- prevented him from "fully utilizing" Online*Plus* during the proposed class period, and thus breached his "right to access, use and display" Online*Plus*, which entitles him to seek money damages against the defendant.

The plaintiff's interpretation of the "right to access, use and display" Online*Plus* has no support in the text of the Subscription Agreement. The Subscription Agreement did not obligate the defendant to provide the plaintiff with a right to access, use and display Online*Plus* through the website and Mobile App that was free of data loss, access errors or delays, or other similar technical errors. To the contrary, the Subscription Agreement expressly provided that the defendant had not undertaken these obligations.

The right to access, use and display Online*Plus* was expressly conditioned upon the plaintiff's agreement to the other provisions of the Subscription Agreement, <u>see</u> Subscription

11

Agreement § 2, and accordingly cannot be interpreted in
isolation from the rest of the Subscription Agreement, see Adams
v. Suozzi, 433 F.3d 220, 228 (2d Cir. 2005)("A written contract
will be read as a whole, and every part will be interpreted with
reference to the whole; and if possible it will be so
interpreted as to give effect to its general purpose."
(citations omitted)); John Hancock Mut. Life Ins. Co. v.
Carolina Power & Light Co., 717 F.2d 664, 669 n.8 (2d Cir. 1983)
("New York law recognizes that definitive, particularized
contract language takes precedence over expressions of intent
that are general, summary, or preliminary.").

In the stand-alone section entitled "Disclaimer of
Warranties," the Subscription Agreement clearly and unmistakably
disclaimed any and all warranties and representations related to
the access, use and display of Online*Plus*, "express or implied."
Subscription Agreement § 17. The Subscription Agreement further
specified that Online*Plus* was provided "AS IS" and that there
was no warranty that any aspect of Online*Plus* would function
reliably. Subscription Agreement § 17. Moreover, the
Subscription Agreement provided that the defendant did not
warrant that methods of accessing, using or displaying
Online*Plus* would function error-free or uninterrupted, or that
defects would be corrected. Subscription Agreement § 17.

12

Under New York law, disclaimers of warranties and representations are permissible, and bar contract claims based on the alleged breach of those warranties and representations. Goodman Mfg. Co. L.P. v. Raytheon Co., No. 98-cv-2774 (LAP), 1999 WL 681382, at *13 (S.D.N.Y. Aug. 31, 1999) (citing Smith v. Fitzsimmons, 584 N.Y.S.2d 692, 694 (App. Div. 1992); Young v. Keith, 492 N.Y.S.2d 489, 490 (App. Div. 1985)); see also Freidman v. Gen. Motors Corp., 721 F. Supp. 2d 218, 225-26 & n.42 (S.D.N.Y. 2010) (noting the phrase "AS IS" is commonly understood to disclaim any implied warranties). The Court of Appeals for the Second Circuit recently applied this principle in Lanier v. Bats Exch., Inc., No. 15-1683, 2016 WL 5335022, at *1 (2d Cir. Sept. 23, 2016), and affirmed the dismissal of a purported class action for breach of contract against an equities market exchange based on purported breaches of the exchange's alleged obligation to ensure that all of its subscribers received data on an equally timely basis. To the extent that the plaintiff's claim was based on the terms of the subscription agreements at issue, the Court of Appeals held that the plaintiff could not state a claim for breach of contract because the plaintiff could not identify any contractual obligations by the exchange to ensure timely receipt of data in the text of the agreements; indeed, those subscriber agreements

13

had expressly "disclaim[ed] liability for the untimely delivery of data." Id. at *12-13.

Likewise, here, the plaintiff is attempting to maintain a claim for breach of contract against the defendant based upon purported obligations that do not exist within the Subscription Agreement. The general right to access, use and display Online*Plus* in Section 2 of the Subscription Agreement was conditioned upon the express language of Section 17, where the defendant clearly and unmistakably disclaimed any representations and warranties related to accessing, using and displaying Online*Plus*. Beyond the general disclaimer, Section 17 addressed the exact issues at the heart of the plaintiff's claim, making clear that the defendant was not obligated to provide reliable service free of data loss, errors, or interruptions, or to correct any defects in service. The plaintiff got what he bargained for: the ability to access, use and display Online*Plus* on an "AS IS" basis. Accordingly, his allegations of, at best, some data loss and occasional difficulty accessing Online*Plus* during the proposed class period fail to state a claim for breach of contract. See, e.g., id.; Goodman Mfg. Co. L.P., 1999 WL 681382, at *13 (dismissing breach of contract claim because "the parties limited the warranties and representations that make up the [contract]"); T.T.

14

Exclusive Cars, Inc. v. Christie's Inc., No. 96-cv-1650 (LMM), 1996 WL 737204, at *3 (S.D.N.Y. Dec. 24, 1996) (same).

The plaintiff does not seriously contest that the disclaimer of warranties in Section 17 of the Subscription Agreement clearly and unambiguously disclaimed all warranties with respect to Online*Plus*. Instead, the plaintiff raises several arguments in an effort to circumvent the Subscription Agreement's disclaimer of warranties, none of which is persuasive.

First, the plaintiff argues incorrectly that, in offering the right to access, use, and display Online*Plus,* the Subscription Agreement necessarily contained an implicit, subsidiary obligation to adhere to unofficial though allegedly industry-standard software development "best practices" in connection with updating and supporting the component parts of Online*Plus*, its website and Mobile App. According to the plaintiff, had the defendant followed these best practices, he would never have suffered his alleged injuries. There is no textual support in the Subscription Agreement for this obligation, which would essentially function as an implied warranty to maintain the website and Mobile App at an unspecified industry-standard level. An implied "best practices" obligation is plainly inconsistent with, and would overwrite, the express disclaimer of all warranties, which provides that

Online*Plus* is offered "AS IS." See Freidman, 721 F. Supp. 2d at 225-26 & n.42. The plaintiff's position is thus untenable.

Second, in a similar vein, the plaintiff argues at length in his opposition papers that the defendant violated its implied covenant of good faith and fair dealing, and that this covenant should be used to interpret the Subscription Agreement. The claim is without merit.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance," which "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500 (N.Y. 2002) (internal quotation marks omitted); see also First Am. Int'l Bank v. Cmty.'s Bank, 771 F. Supp. 2d 276, 283 (S.D.N.Y. 2011). The covenant incorporates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included," Rowe v. Great Atl. & Pac. Tea Co., 385 N.E.2d 566, 569 (N.Y. 1978) (citation and internal quotation marks omitted), but does not include any obligation that would be inconsistent with the express terms of the contract, Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291-92 (N.Y. 1995). The covenant "does not extend so far as to undermine a party's general right to act on its own interests in

16

a way that may incidentally lessen the other party's anticipated
fruits from the contract." M/A-COM Sec. Corp. v. Galesi, 904
F.2d 134, 136 (2d Cir. 1990) (per curiam) (citations and
internal quotation marks omitted); see also Vysyaraju v. Mgmt.
Health Sols., Inc., No. 12 CIV. 4420 (JGK), 2013 WL 4437236, at
*11 (S.D.N.Y. Aug. 19, 2013).

The plaintiff argues that the defendant violated the
implied covenant of good faith and fair dealing because the
defendant failed to use reasonable efforts to remedy
Online*Plus*'s defects and thus provide reasonable access to a
reasonably functioning service. The plaintiff's claim fails
because the defendant's obligations under the implied covenant,
as interpreted by the plaintiff, are inconsistent with the
express terms of the Subscription Agreement. The Subscription
Agreement explicitly disclaimed all warranties, and, in
particular, was clear that the defendant had not promised that
it would correct any defects related to access, use or display
of Online*Plus*, or that access, use or display of Online*Plus*
would function without errors, interruptions, or loss of data.
The implied covenant of good faith and fair dealing "cannot add
to, detract from, or alter the terms of the contract itself."
Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins., 97-cv-
4914 (SS), 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997)
(Sotomayor, J.), aff'd, 149 F.3d 134 (2d Cir. 1998); see also

17

Vanlex Stores, Inc. v. BFP 300 Madison II, LLC, 887 N.Y.S.2d 576, 577 (App. Div. 2009). The plaintiff cannot invoke the covenant to erase or otherwise vary the Subscription Agreement's disclaimer of warranties. See Bank of Am., N.A. v. Column Fin., Inc., No. 10-cv-6378 (LLS), 2011 WL 2652464, at *4 (S.D.N.Y. July 6, 2011) (finding that implying a covenant of good faith imposing obligation on lender to conduct due diligence on mortgages "in accordance with customary commercial mortgage lending standards" would be inconsistent with terms of contract that provided that the transfer of the mortgages was non-recourse). The plaintiff's resort to the covenant of good faith and fair dealing does not salvage his breach of contract claim.

Third, the plaintiff argues that giving effect to the disclaimer of warranties would render the Subscription Agreement illusory because the defendant could stop performing in its discretion by deciding to provide no access to Online*Plus*. See Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc., No. 14 CIV. 8727 (NRB), 2015 WL 4486335, at *4 (S.D.N.Y. July 23, 2015) ("A bilateral contract may be illusory for lack of mutuality of obligation." (citation and internal quotation marks omitted)). In New York, contract "interpretation that renders a contract illusory and therefore unenforceable is disfavored and enforcement of a bargain is preferred, particularly where, as here, the parties have expressed their intent to be

18

contractually bound in a writing." <u>Credit Suisse First Bos. v.</u>
<u>Utrecht-Am. Fin. Co.</u>, 915 N.Y.S.2d 531, 535 (App. Div. 2011)
(citations omitted).

The plaintiff's argument is without merit. As discussed
above, under New York contract law, a party may disclaim
warranties and representations, and such disclaimers do not
render contracts illusory. The defendant admits that, pursuant
to the Subscription Agreement, it has an obligation to provide
the plaintiff with a right to access Online*Plus* on an "AS IS"
basis. See Def.'s Reply Br. at 8-9 & n.3. Given that the
Subscription Agreement can be read so that the defendant owes
the plaintiff an obligation, the Subscription Agreement should
not be interpreted to be illusory.[4] <u>See Coventry Enters. LLC</u>,
2015 WL 4486335, at *4 (rejecting interpretation that would
render contract illusory when other permissible contract
constructions existed); <u>In re Cablevision Consumer Litig.</u>, 864
F. Supp. 2d 258, 263 (E.D.N.Y. 2012) (rejecting cable-provider's
argument that contract did not obligate it to provide customers
with access to any channels because that interpretation would

---

[4] The plaintiff attempts to analogize this case to <u>Wood v. Lucy,</u>
<u>Lady Duff-Gordon</u>, 118 N.E. 214 (N.Y. 1917) (Cardoza, J.). But
this case is nothing like <u>Lady Duff-Gordon</u>, where the Court of
Appeals interpreted a marketing contract as imposing an implied
best efforts obligation on the defendant in order to avoid a
finding that the contract was illusory. See <u>id.</u> at 214-215.

mean the cable-provider had "not really promised to provide anything and the contract [would be] arguably illusory").

Finally, the plaintiff inconsistently argues at various points in his opposition that the defendant provided the plaintiff with literally "no service," for a period of months, as opposed to a service that the plaintiff could access but found wanting due to several alleged deficiencies. Compare Pl.'s Op. Br. at 11 ("[this case] involves no service"), with Pl.'s Op. Br. at 5 ("plaintiff and the other proposed class members were unable to utilize fully [Online*Plus*]"), and Pl.'s Op. Br. at 14 ("subscribers at various times could not (a) access [Online*Plus*]"). The "no service" characterization greatly overstates the plaintiff's alleged injuries in the Amended Complaint: some data loss, Am. Compl. ¶¶ 22-23, and difficulty accessing Online*Plus* on one occasion after two chat-room conversations with the defendant's support staff, Am. Compl. ¶ 19. At best, the Amended Complaint's allegations support a plausible inference that the plaintiff experienced data loss and intermittent access interruptions, which led him to be dissatisfied with Online*Plus*; they do not support a plausible inference that the plaintiff could not access Online*Plus* at all for an extended period of time. Moreover, the Amended Complaint alleges that third-parties were able to access Online*Plus* throughout the class period, notwithstanding that the third-

20

parties claimed to find Online*Plus* unsatisfactory. The plaintiff cannot amend his complaint "merely by raising new facts and theories in [his] opposition papers." Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) (quoting Southwick Clothing LLC v. GFT (USA) Corp., No. 99-cv-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004)). It is unnecessary to decide if an extended inability to access Online*Plus* at all would constitute a breach of the defendant's obligations under the Subscription Agreement because that is not the injury that the plaintiff is alleged to have suffered. Under the terms of the Subscription Agreement, the allegations of data loss and intermittent access interruptions do not constitute a breach of the Subscription Agreement.

Accordingly, because the plaintiff cannot identify an obligation that the defendant breached, his claim must be dismissed.

### (ii)

Moreover, Sections 2, 4, and 18 of the Subscription Agreement (collectively, the "Limitation of Liability Provisions") are an independent bar to the plaintiff's breach of contract claim for money damages. In New York, "A limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed,

which the courts should honor."[5] Metro. Life Ins. Co. v. Noble
Lowndes Int'l, Inc., 643 N.E.2d 504, 507 (N.Y. 1994); see also
Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, No. 11-cv-2375
(JSR), 2011 WL 5335566, at *2, *5 (S.D.N.Y. Oct. 31, 2011).

The defendant argues that the Limitation of Liability
Provisions limited the plaintiff's recourse for his alleged
injuries to termination or cancellation of the Subscription
Agreement. The plaintiff responds that the defendant's
interpretation of the Subscription Agreement would limit a
subscriber's recourse to cancellation or termination in all
circumstances, which cannot be accurate because Section 18 ---
the section entitled "Limitation of Liability" --- contains a
clause that provides: "IN NO EVENT SHALL OUR TOTAL LIABILITY TO
YOU FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION (WHETHER IN
CONTRACT, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), OR
OTHERWISE) EXCEED THE AMOUNT PAID BY YOU, IF ANY, FOR ACCESSING
THIS WEBSITE." Subscription Agreement § 18. The plaintiff
contends that a clause setting a cap on damages in the event of

---

[5] New York courts recognize that limitation of liability
provisions may be unenforceable in certain circumstances where,
for example, the contract is an unenforceable contract of
adhesion, or a party willfully and tortiously breaches the
contract. See Metro. Life Ins. Co., 643 N.E.2d at 507 n.*. The
plaintiff has not advanced either argument as a ground for
finding the Limitation of Liability Provisions here
unenforceable, and those arguments therefore need not be
considered. In any event, the plaintiff has failed to identify
an obligation that the defendant breached, which independently
defeats his claim.

litigation has no purpose unless the Subscription Agreement contemplates the possibility of litigation. See Givati v. Air Techniques, Inc., 960 N.Y.S.2d 196, 198 (App. Div. 2013) ("[A] court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous."). The plaintiff thus concludes that any subscriber is entitled to pursue money damages for any breach of the Subscription Agreement, with recovery presumably capped by the subscriber fees paid to the defendant.

The plaintiff ignores that the Subscription Agreement provides that subscribers are entitled to fee refunds in certain limited circumstances specifically related to when the defendant discontinues a subscriber's service or when a subscription is cancelled but a subscriber has already prepaid the defendant for future access to Online*Plus*, see Subscription Agreement §§ 2, 3.E, or when the defendant inadvertently receives fees post-cancellation, see Subscription Agreement § 4. Read in the context of the Subscription Agreement as a whole, see Adams, 433 F.3d at 228, the clause referenced by the plaintiff is plainly intended to set a cap on the fee refunds available pursuant to Sections 2, 3.E, and 4 of the Subscription Agreement. The plaintiff's interpretation of the lone sentence in Section 18 as permitting subscribers to pursue money damages for any breach of the Subscription Agreement would render meaningless the rest of

Section 18 along with Sections 2 and 4 of the Subscription Agreement, in contravention of basic principles of contract interpretation. See Givati, 960 N.Y.S.2d at 198.

It is unnecessary to reach the issue of whether the Subscription Agreement limits a subscriber's recourse to cancellation or termination in *all* circumstances other than those provided in Sections 2, 3.E, and 4, because the Limitation of Liability Provisions clearly and unambiguously limited the plaintiff's recourse to cancellation or termination for his alleged injuries. As discussed above, the plaintiff has alleged that he was dissatisfied with Online*Plus* because he experienced access issues on one occasion, Am. Compl. ¶ 19, and lost some data stored on the website, Am. Compl. ¶¶ 22-23. Any reasonable party to the Subscription Agreement would have understood that, based on the express terms contained in the Limitation of Liability Provisions, the sole remedy for any complaint related to data storage issues, occasional access problems, or overall dissatisfaction with Online*Plus* was to exercise the subscriber's right to cancel or terminate the Online*Plus* subscription, a right the subscriber was free to exercise at any time. See Subscription Agreement § 2 (a subscriber's "only right with respect to any dissatisfaction with any modification or discontinuation of service made by us pursuant to this provision or this Agreement, or any policies or practices by us in

24

providing this Website or our Fee-Based Products, . . . is to cancel or terminate your subscription or registered user account"); Subscription Agreement § 4 ("You understand and agree that the cancellation or termination of your subscription is your sole right and remedy with respect to any dispute with us."); Subscription Agreement § 18 ("IF YOU ARE DISSATISFIED WITH ANY PORTION OF OUR WEBSITE, OR WITH ANY PROVISION OF THIS AGREEMENT, YOUR SOLE AND EXCLUSIVE REMEDY IS THE DISCONTINUATION OF YOUR USE OF THIS WEBSITE."). The plaintiff's interpretation of the Subscription Agreement as permitting the pursuit of money damages based on these sorts of alleged injuries cannot be squared with the plain, unambiguous terms of the Subscription Agreement. Because the plaintiff's allegations do not plausibly claim more than mere dissatisfaction with the service he purchased from the defendant, his recourse is limited to termination or cancellation of the Subscription Agreement, and he is barred from seeking money damages against the defendant.

## IV.

The plaintiff's contract claim is dismissed with prejudice. The plaintiff has not requested leave to amend his Amended Complaint and he represented to the Court at a pre-motion conference held on May 3, 2016 that he would not seek further amendment. In any event, further amendment would be futile. See

Foman v. Davis, 371 U.S. 178, 182 (1962); Mackensworth v. S.S.
Am. Merch., 28 F.3d 246, 251 (2d Cir. 1994); see also
Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491,
516 (S.D.N.Y. 2016) ("Generally, the grant of leave to amend the
pleadings pursuant to Rule 15(a) is within the discretion of the
trial court." (citation and quotation marks omitted)). Any new
allegations will not alter the text of the Subscription
Agreement, which is clear and unambiguous, and does not offer a
basis for the plaintiff to pursue a breach of contract claim.

CONCLUSION

The Court has considered all of the arguments raised by the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the foregoing reasons, the
defendant's motion to dismiss is **granted and the Amended
Complaint is dismissed with prejudice**. The Clerk is directed to
enter judgment dismissing this action and closing the case. The
Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:      New York, New York
             November 12, 2016**         _____/s/_____
                                          **John G. Koeltl
                                   United States District Judge**